# IN THE DISTRICT COURT OF THE UNITED STATES
# THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:11-cr-34

| | |
|---|---|
| UNITED STATES OF AMERICA,    )<br>                              )<br>    Plaintiff,                )<br>                              )     **ORDER**<br>        vs.                   )<br>                              )<br>                              )<br>LEROY KIRKPATRICK             )<br>                              )<br>    Defendant.                )<br>                              ) | |

**THIS MATTER** is before the Court upon Defendant's Motion to Dismiss Indictment (Doc. No. 9) and the Government's response (Doc. No. 18).

I.   FACTUAL AND PROCEDURAL BACKGROUND

On February 15, 2011, the Grand Jury for the Western District of North Carolina returned a one-count indictment against Defendant Leroy Kirkpatrick, charging him with possession of a firearm after he had been previously convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1). (Doc. No. 1).  The charge resulted from an incident on June 4, 2010, when officers of the Charlotte-Mecklenburg Police Department searched Defendant's residence and allegedly found a handgun under his pillow, in addition to several corner baggies and a digital scale on the same bed.[1]  (Doc. No. 18: Response at 1-3).  Defendant has two prior felony convictions: Felony Possession of Cocaine in 1988 and Possession of a Firearm by a Felon in 2009. (Id. at 3).

In the instant motion, Defendant challenges the indictment on the following grounds: (1)

---

[1] For purposes of this pretrial motion to dismiss, facts are taken in light most favorable to the Government as the non-moving party. See United States v. Mills, 995 F.2d 480, 489 (4th Cir. 1993) (applying standard when indictment is challenged).

Defendant may lawfully possess a firearm under North Carolina law, and thus, does not fall within the prohibition of 18 U.S.C. § 922(g)(1); (2) § 922(g)(1) violates the Second Amendment both facially and as applied to him; (3) § 922(g)(1) violates the Commerce Clause; and (4) § 922(g)(1) violates the Equal Protection Clause. (Doc. No. 9).

II. DISCUSSION

    A. N.C. Gen. Stat. § 14-415.1

Defendant asserts that a 2009 North Carolina Supreme Court decision restored his civil right to bear arms, thus, removing him from the scope of § 922(g). (Doc. No. 9: Motion at 2-4).

Originally, North Carolina's Felony Firearms Act prohibited convicted felons from possessing firearms for five years after their release from prison. N.C. Gen. Stat. § 14-415.1(a) (1975). The statute was later amended in 1995 to permanently prohibit the possession of firearms by all convicted felons, regardless of the date of conviction. N.C. Gen. Stat.§ 14-415.1(a) (1995). Then in 2004, the North Carolina General Assembly amended the statute again to expand the ambit of its restriction to include all firearms, while retaining the permanent ban. N.C. Gen.Stat.§ 14-415.1(a) (2004). Finally in 2006, the statute was modified to exempt "antique firearms" from the scope of firearms convicted felons are prohibited from possessing. N.C. Gen.Stat.§ 14-415.1(a) (2006). Accordingly, all convicted felons are permanently prohibited from possessing a firearm under current North Carolina law.

In Britt v. State, 681 S.E.2d 320, 323 (2009), the North Carolina Supreme Court held that N.C. Gen. Stat. § 14-415.1 was unconstitutional as applied to a particular individual. Britt was convicted of a drug offense in 1979 and had his rights restored under the former statute. Id. at 321. However, he divested himself of all firearms when a sheriff advised him that the 2004 amendment applied to him. Id. at 322. He then filed a civil lawsuit challenging the amendment

as an ex post facto infringement of his previously restored right to bear arms. Id. The North Carolina Supreme Court held that the 2004 amendment to § 14-415.1 was unconstitutional as applied to Britt based on the specific facts of his crime; post-conviction compliance with the law and lawful firearm possession; the absence of any violent history; and the lack of any exception of possible relief from the statute's operation. Id. at 323.

Contrary to Defendant's assertion in the instant motion (Doc. No. 9: Motion at 4), that decision did not purport to restore Defendant's, or any other felon's, right to bear arms. Id. (finding law unconstitutional as to particular plaintiff). As later explained by the United States Court of Appeals for the Fourth Circuit, the decision opened the door to restoration of a felon's right to possess firearms by judicial determination. United States v. Hairston, No. 08-4958, 2010 WL 411005 at *4 n. 7 (4th Cir. Feb. 4, 2010). Here, unlike the civil plaintiff in Britt who divested himself of firearms then proactively filed suit to challenge the law, Defendant waited until he was charged with a criminal offense to seek judicial determination of his right to bear arms in federal court. Also, unlike Britt, who complied with the law for thirty years after his conviction, Defendant has been charged with his second gun offense and was possibly involved in drug trafficking. Thus, the circumstances in this case are dissimilar to those in Britt and the North Carolina Supreme Court's decision did not restore Defendant's right to bear arms. Accordingly, he is subject to prosecution under § 922(g)(1).

B.  Constitutionality of 18 U.S.C. § 922(g)(1)

Relying on District of Columbia v. Heller, 554 U.S. 570 (2008), Defendant contends that § 922(g)(1) violates his rights protected by the Second Amendment. (Doc. No. 9: Motion at 5-10). In Heller, the Supreme Court upheld an individual's right to keep and bear arms under the Second Amendment, recognizing that the "core" of the Second Amendment's protections was

"the right of law-abiding, responsible citizens to use arms in the defense of the hearth and home." Id. at 634-36.

Considering a challenge to § 922(g)(9), the Fourth Circuit recently outlined a two-part standard for deciding post-Heller Second Amendment claims. United States v. Chester, 628 F.3d 673, 680 (4th Cir. 2010). First, a court must determine "'whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee' . . . at the time of ratification." Id. (quoting United States v. Marzzarella, 614 F.3d 85, 89 (3d Cir. 2010)). If it does not, the law is constitutional. Id. If the challenged law does burden "conduct within the Second Amendment as historically understood," then a court proceeds to the second prong and applies "an appropriate form of means-end scrutiny." Id. While noting that Heller only rejected rational basis as the appropriate level of scrutiny, the Fourth Circuit held that a Second Amendment claim outside the "core right identified in Heller," defined as "the right of every *law-abiding, responsible* citizen to possess and carry a weapon for self-defense," warrants intermediate scrutiny. Id. at 683. (emphasis in original).

Like other constitutional rights, there are limitations on the Second Amendment right as identified in Heller. 554 U.S. at 626. Notably, the Court has twice stated that its decision in Heller should not be read "to cast doubt on longstanding prohibitions" such as "the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." Heller, 554 U.S. at 626-27; McDonald v. City of Chicago, 130 S.Ct. 3020, 3047 (2010). The Heller Court defined this non-exhaustive, exemplary list of prohibitions as "presumptively lawful regulatory measures." Id. As such, § 922(g)(1) falls within the list of "presumptively lawful regulatory measures" identified in Heller.

4

However, the Fourth Circuit noted that Heller's "presumptively lawful regulatory measures" language and illustrative list of constitutional "long-standing prohibitions" are subject to two possible interpretations. Chester, 628 F.3d at 679 ("It is unclear to us whether Heller was suggesting that 'longstanding prohibitions' such as these were historically understood to be valid limitations on the right to bear arms or did not violate the Second Amendment for some other reason."). Nonetheless, either of these interpretations is constitutionally valid under the Fourth Circuit's two-step standard for analyzing Second Amendment claims.

First, if the "presumptively lawful regulatory measures" are considered to be "historical limitations," they regulate conduct not within the Second Amendment's protections. Id. at 680. Accordingly, as these regulations would not burden "conduct within the Second Amendment as historically understood," they would be valid under the first prong of the Chester standard. Id. Second, even if the listed regulations are not considered to be "historical limitations" and burden conduct protected by the Second Amendment, they still could be viewed as "presumptively lawful regulatory measures" as they are "valid on their face under any level of means-end scrutiny applied." Id. at 679. Thus, the regulations would presumably pass the second prong of the standard's application of the "appropriate form of means-end scrutiny." Id. at 680. Therefore, under either of these two interpretations, § 922(g)(1), a "presumptively lawful regulatory measure," is facially constitutional.

Moreover, regardless of whether or not § 922(g)(1) is interpreted to be a "historical limitation" on the right of felons to possess firearms, § 922(g)(1) is constitutional as applied to Defendant. Applying the first part of the Chester standard, the Court must determine whether § 922(g)(1) "imposes a burden on conduct falling within the scope of the Second Amendment's

5

guarantee' . . . at the time of ratification." Id. (quoting Marzzarella, 614 F.3d at 89). It is undisputed that § 922(g)(1) is a categorical ban on all firearm possession for certain persons. Id. ("Section 922(g)(9), like the felon-dispossession provision set forth in § 922(g)(1), permanently disarms an entire category of persons."). Accordingly, for such categorical bans, the initial question is "whether a person, rather than the person's conduct, is unprotected by the Second Amendment." Id. While the Government attempts to present historical evidence that convicted felons were prohibited from possessing firearms at the time of the Second Amendment's ratification, the Fourth Circuit has previously stated that the evidence is inconclusive. Id. ("[I]t appears to us that the historical data is not conclusive on the question of whether the founding era understanding was that the Second Amendment did not apply to felons.").

As such, if the inconclusive historical evidence renders Defendant's Second Amendment rights intact, the Court must proceed to the second part of the Chester standard and apply some form of heightened scrutiny to his as-applied challenge to § 922(g)(1). Id. at 681-82. Although Defendant urges the Court to adopt a strict scrutiny standard because § 922(g)(1) burdens his fundamental right to possess a firearm in his home for the purpose of self-defense, this argument has been excluded by Chester. In Chester, the Fourth Circuit dismissed a similar argument for strict scrutiny, holding that a domestic violence misdemeanant was outside the "core right identified in Heller–the right of every *law-abiding, responsible* citizen to possess and carry a weapon for self-defense," by virtue of his criminal history of domestic violence. Id. at 683. (emphasis in original). Accordingly, the Fourth Circuit held that intermediate scrutiny was the appropriate standard for the defendant and "similarly situated persons." Id. Likewise, Defendant is not within the "core right identified in Heller" by virtue of his two felony convictions, thus, intermediate scrutiny is appropriate.

Under intermediate scrutiny, the Government must prove that "there is a 'reasonable fit' between the challenged regulation and a 'substantial' government objective." Id. at 683. It is well-established that protecting the safety and lives of citizens and preventing crime is a substantial government objective. See United States v. Solerno, 481 U.S. 739, 750, 754-55 (1987). Additionally, as the Government notes, there is a "settled connection between drugs and firearms," United States v. Manigan, 592 F.3d 621, 629 (4th Cir. 2010), and it is well-established in the Fourth Circuit that "drugs and guns form a lethal combination that can lead to violence." Id. (quoting United States v. Harris, 128 F.3d 850, 852 (4th Cir. 1997)).

Here, Defendant's prior felonies were convictions for possession of drugs and possession of a firearm. Furthermore, in this case, the firearm was found near corner baggies and a digital scale during a drug investigation at Defendant's residence. In light most favorable to the Government for purposes of the instant motion, the evidence indicates that Defendant possessed items that "form a lethal combination that can lead to violence." Therefore, § 922(g)(1)'s permanent disarmament of felons, such as Defendant, is a reasonable means of achieving the government's objective of protecting the safety of citizens and deterring future violence and crime. Accordingly, § 922(g)(1) survives intermediate scrutiny and is constitutional as applied to Defendant.

    C.    Commerce Clause

Pointing to the Supreme Court's decision in United States v. Lopez, 514 U.S. 549 (1995), Defendant asserts that § 922(g)(1) is an unconstitutional exercise of Congress' commerce power, as a minimal nexus to interstate commerce is insufficient to confer federal jurisdiction. (Doc. No. 9: Motion at 10-12). However, every circuit post-Lopez has held that Congress has the power under the Commerce Clause to enact § 922(g)(1). United States v. Wells, 98 F.3d 808, 811 (4th

Cir. 1996); United States v. Smith, 101 F.3d 202, 215 (1st Cir. 1996), *cert. denied*, 520 U.S. 1160 (1997); United States v. Trzaska, 111 F.3d 1019, 1028 (2d Cir. 1997); United States v. Gateward, 84 F.3d 670, 672 (3d Cir.), *cert. denied*, 529 U.S. 907 (1996); United States v. Rawls, 85 F.3d 240, 242 (5th Cir. 1996); United States v. Murphy, 107 F.3d 1199, 1211 (6th Cir. 1997); United States v. Barry, 98 F.3d 373, 378 (8th Cir. 1996), *cert. denied*, 519 U.S. 1140 (1997); United States v. Beasley, 346 F.3d 930, 939 (9th Cir. 2003), *cert. denied*, 542 U.S. 921 (2004); United States v. Bolton, 68 F.3d 396, 400 (10th Cir. 1995), *cert denied*, 516 U.S. 1137 (1996); United States v. Adams, 91 F.3d 114, 114 (11th Cir.), *cert. denied*, 519 U.S. 1047 (1996).

Moreover, Heller's recognition of an individual's right to keep and bear arms does not increase the minimal nexus requirement. See United States v. Brunson, No. 07-4962, 2008 WL 4180057 at *1 (4th Cir. Sept. 11, 2008) (rejecting Commerce Clause and Second Amendment challenges to § 922(g)(1) in light of Heller). Accordingly, § 922(g)(1) remains a valid exercise of Congress' commerce power.

    D.    Equal Protection Clause

Lastly, Defendant argues that § 922(g)(1) violates the Equal Protection Clause within the Fifth and Fourteenth Amendments because it inconsistently restores to some felons the right to bear arms by incorporating disparate state laws. (Doc. No. 9: Motion at 13-16). Therefore, the rights of felons are restored differently based upon the state in which they reside. (Id.). Defendant asserts that the right to keep and bear arms is a fundamental right, thus, § 922(g)(1) is subject to strict scrutiny review. (Id.).

However, because the fundamental right to keep and bear arms does not apply to convicted felons, an equal protection challenge to § 922(g)(1) is reviewed for rational basis. See

8

Lewis v. United States, 445 U.S. 55, 65-66 (1980) (applying rational basis test to former statute); United States v. Vongxay, 594 F.3d 1111, 1118-19 (9th Cir. 2010). Prohibiting the possession of a firearm by a convicted felon is a rational means of achieving the legitimate government objective to deter crime and protect the safety of citizens. Lewis, 445 U.S. 65-66. Thus, § 922(g)(1) is constitutional under the Equal Protection Clause.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED that**:

Defendant's Motion to Dismiss Indictment (Doc. No. 9) is **DENIED**.

Signed: July 27, 2011

Robert J. Conrad, Jr.
Chief United States District Judge